**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


J & J SPORTS PRODUCTIONS, INC.,           :
                                          :          CIVIL ACTION
                             Plaintiff,   :
                                          :
              v.                          :
                                          :          NO.  13-6885
RAFAEL MARTINEZ, et al.                   :
                                          :
                             Defendants.  :


<u>**MEMORANDUM**</u>

BUCKWALTER, S. J.                                              October 23, 2014


Currently pending before the Court is Plaintiff J & J Sports Productions, Inc.'s ("J & J"'s)

Motion for Summary Judgment.  For the following reasons, the Motion is granted in part and

denied in part.

## I.      FACTUAL BACKGROUND

Plaintiff J & J is a closed circuit distributor of sports and entertainment programming.

(Pl.'s Mot. Summ. J., Aff. of Joseph M. Gagliardi ("Gagliardi Aff."), ¶ 3, July 29, 2014.)[1]  J & J

purchased and retains the exclusive commercial exhibition (closed circuit) licensing rights to a

Championship Fight Program entitled, *"Good vs. Evil": Miguel Angel Cotto v. Antonio*

*Margarito, WBA Super World Light Middleweight Championship Fight Program* (the

"Program").  (<u>Id.</u> ¶ 3.)  J & J thereafter marketed the sub-licensing (commercial exhibition) rights

to its commercial customers.  (<u>Id.</u>)  The Program was legally available to commercial

---

[1]  Gagliardi is the President of Plaintiff J & J Sports Productions, Inc.  (Gagliardi Aff. ¶
1.)

establishments only through an agreement with Plaintiff.  (Id.)  The commercial fee to broadcast the December 3, 2011 Program for an establishment the size of Defendants' establishment was $1,200.  (Id. ¶ 8, Ex. 2.)

At no time did J & J sublicense the Program to Defendants Rafael Martinez or Maria E. Martina, either individually or doing business as 3 Hundred West (collectively, "Defendants"). (Id. ¶ 8.)  Notably, Defendants Rafael Martinez and Maria Martinez were shareholders and officers of 300 R & M, Inc., which owned and operated the commercial establishment doing business as 3 Hundred West, located at 300 W. Lehigh Avenue, Philadelphia, PA.  (Compl. ¶¶ 8–9; Defs.' Answer ¶¶ 8–9; Defs.' Answers to Plaintiff's Request for Admissions Nos. 29, 31.) Defendant Rafael Martinez was identified as the President, Secretary/Treasurer, Director and Stockholder of 300 R & M, Inc. on the liquor license issued to 300 R & M, Inc. for its commercial establishment at 300 W. Lehigh Avenue, Philadelphia, Pennsylvania.  (Pl.'s Mot. Summ. J., Decl. of Thomas P. Riley ("Riley Decl.") ¶ 4, Ex. 1, Aug. 5, 2014.)  Defendant Maria Martinez was identified as the Vice-President, Director and Stockholder of 300 R & M, Inc. on the liquor license issued to 300 R & M for the commercial establishment located at 300 W. Lehigh Avenue.  (Id.)

Facing serious erosion in the sales of its proprietary programming to commercial customers, Plaintiff J & J embarked upon a nationwide program to police signals in order to identify and prosecute commercial establishments that pirated its programming.  (Gagliardi Aff. ¶ 5.)  To do so, it retained auditors and law enforcement personnel to detect and identify pirate signals.  (Id. ¶ 6.)  J & J's programming cannot be mistakenly, innocently, or accidentally intercepted because its programming is encrypted and it is only after J & J authorizes a

commercial activation that a commercial establishment may broadcast the signal.  (Id. ¶ 9.)
There are, however, several methods by which a signal pirate can unlawfully intercept and
broadcast J & J programming, including:  use of a "blackbox," "hotbox," or "pancake box"; use
of a "smartcard," "text card," or "programming card"; purposeful misrepresentation of a
commercial establishment as a residential property to allow fraudulent purpose at the residential
rate; the use of an illegal cable drop or splice from an adjacent apartment or home; or the
purchase of other illegal unencryption devices or illegal satellite authorization codes.  (Id. ¶ 10.)

On the night of the Program broadcast, two private investigators hired by J & J entered
the premises at 300 W. Lehigh Avenue, Philadelphia, PA.  (Pl.'s Mot. Summ. J., Aff. of Justin
Lantz ("Lantz Aff."), Dec. 6, 2011; Pl.'s Mot. Summ. J., Aff. of Dustin Vilardo ("Vilardo Aff."),
Dec. 7, 2011.)  Investigator Lantz entered the premises on Saturday, December 3, 2011 at 10:50
p.m. and did not pay any cover charge to enter.  (Lantz Aff.) He ordered a drink from the
bartender and, while there, he observed two television screens showing the Program.  (Id.)  At the
time of his appearance, he counted the number of patrons two separate times and had head counts
of twenty-five and twenty, respectively.  (Id.)  Investigator Vilardo entered the premises at 10:00
p.m. on Saturday, December 3, 2011 and also paid no cover charge.  (Vilardo Aff.)  He ordered
two drinks from the bartender and also observed two televisions showing the Program at issue.
(Id.)  While in the bar, he counted the number of patrons three separate times and, on all three
occasions, there were thirty-four patrons in the bar.  (Id.)

Plaintiff instituted the current litigation on November 26, 2013, setting forth three counts
as follows: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion.
On August 5, 2014, Plaintiff filed the current Motion for Summary Judgment.  Defendants

submitted their Response on August 18, 2014, and Plaintiff filed a Reply Brief on August 27,

2014.  The Motion is now ripe for judicial consideration.

## II.      STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is

"material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to

return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence

that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv.

Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the

disputed evidence and decide which is more probative, or to make credibility determinations.

Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA

Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court

must consider the evidence, and all reasonable inferences which may be drawn from it, in the

light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg

Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact,

it need not "support its motion with affidavits or other similar materials negating the opponent's

claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing

out . . . that there is an absence of evidence to support the nonmoving party's claims."   Id. at

325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden at trial,"

summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of

some evidence in support of the non-movant will not be adequate to support a denial of a motion

for summary judgment; there must be enough evidence to enable a jury to reasonably find for the

non-movant on that issue.  Anderson, 477 U.S. at 249–50.

## III.    DISCUSSION

Plaintiff currently seeks summary judgment on its cause of action under 47 U.S.C. § 605.[2]

In addition, it requests both statutory damages and enhanced statutory damages.  The Court

addresses liability and damages separately.

### A.    Liability

Title 47 of the United States Code, Section 605 provides, in pertinent part:

No person not being authorized by the sender shall intercept any radio
communication and divulge or publish the existence, contents, substance, purport,
effect, or meaning of such intercepted communication to any person.  No person not
being entitled thereto shall receive or assist in receiving any interstate or foreign
communication by radio and use such communication (or any information therein
contained) for his own benefit or for the benefit of another not entitled thereto.  No
person having received any intercepted radio communication or having become
acquainted with the contents, substance, purport, effect, or meaning of such

---

[2]  Although Plaintiff has another cause of action under 47 U.S.C. § 553, it does not seek
summary judgment on this claim.  In its Motion for Summary Judgment, Plaintiff explains that,
according to the Third Circuit, Section 605 applies to satellite transmission and Section 553
applies to transmissions over cable systems.  TKR Cable Co. v. Cable City Corp., 267 F.3d 196,
207 (3d Cir. 2001).  It goes on to state that "[a]s there is evidence that Defendants had satellite
Directv service (and did not have cable service) on the date of the Program . . ., and as a satellite
dish was present, . . . Plaintiff seeks judgment pursuant to 47 U.S.C. § 605."  (Pl.'s Mem. Supp.
Summ. J. 6.)

communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).  This statute "prohibit[s] the unauthorized interception and exhibition of communications and . . . require[s] the plaintiff to show that the defendants intercepted a broadcast, were not authorized to intercept the broadcast, and showed this broadcast to others." J & J Sports Prods., Inc. v. Gencarelli, No. Civ.A.10-4375, 2012 WL 266419, at *3 (D.N.J. Jan. 30, 2012) (citing 47 U.S.C. § 605) (further citations omitted).  "In addition, [this] statute[] allow[s] enhanced damages if the plaintiff proves that the defendants willfully intercepted the broadcast for commercial advantage or private financial gain."  Id.  Violation of § 605 is a strict liability offense.  J & J Sports Prods., Inc. v. Gonzalez, No. Civ.A.12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013).

Plaintiff presents ample evidence to establish each of the three elements of a violation of § 605 by the Defendants doing business as 3 Hundred West.  First, as set forth above, Plaintiff had exclusive commercial distribution rights for the Program and any commercial establishments that wished to distribute the Program were required to contract with Plaintiff.  Defendants never contracted with Plaintiff, but nonetheless broadcast the Program at their establishment on December 3, 2011, as revealed by the affidavits from the private investigators.  As such, Plaintiff has clearly established that 3 Hundred West was not authorized to receive or distribute the transmission rights to the Program, but nonetheless did so and showed the broadcast to others.

6

Defendant 3 Hundred West offers almost no defense to liability, arguing as follows:

Plaintiff bears the burden of proving that the tavern displayed the Program. Plaintiff relies on two self-serving affidavits from two investigators hired by plaintiff that the Program was displayed on the night in question.  Defendants do not know whether the Program was actually shown in the establishment.  In answer to Interrogatory #21, defendants, Rafael Martinez and Maria Martinez state they are without information as to whether or not the event was shown at the establishment and that they were not managing the establishment at the time, and were not in the establishment the day in question.  Plaintiff has failed to establish that they are entitled to summary judgment as a matter of law.

(Defs.' Resp. Opp'n Summ. J. 2–3.)  In response to Plaintiff's specific averments of fact,

Defendants admitted that they did not pay a commercial licensing fee to broadcast the Program,

but claimed they were "without information as [to] whether the 'Program' was intercepted,

received, published and/or exhibited."  (Defs.' Resp. Opp'n Pl.'s Statement of Facts ¶¶ 11–12.)

Such denials are insufficient to survive summary judgment.   Pursuant to Federal Rule of

Civil Procedure 56(c)(1), "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by:  (A) citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials; or  (B) showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1).  In other words, once the moving party meets its burden of

showing an absence of genuine issues of material fact, the nonmoving party must provide some

evidence that an issue of material fact remains.  Matsushita, 475 U.S. at 586.  The nonmoving

party cannot do so by merely offering general denials, vague allegations, or conclusory

statements; rather the party must point to specific evidence in the record that creates a genuine

issue as to a material fact.  Celotex, 477 U.S. at 324–25.  Defendants doing business as 3 Hundred West have failed to do so.  Accordingly, summary judgment against them is appropriate.

With respect to the liability of Defendants in their individual capacities, an additional layer of analysis is required.  In order to impose individual liability, a plaintiff must prove: "(1) [the] [d]efendant . . . had both the right and ability to supervise the infringing activity; and (2) [the] [d]efendant . . . received a direct financial benefit from such activity."  J & J Sports Prods., Inc. v. Kraynak, No. Civ.A.10-2486, 2013 WL 228962, at *5 (M.D. Pa. Jan. 22, 2013) (citing DIRECTV v. Cibulka, No. Civ.A.11-0231, 2011 WL 3273058 *1 (M.D. Pa. July 29, 2011) (citing Parker v. Google, Inc., 242 F. App'x 833, 837 (3d Cir. 2007); Joe Hand Promotions, Inc. v. Angry Ales, Inc., No. Civ.A.06-73, 2007 WL 3226451 at *4 (W.D.N.C. Oct. 29, 2007))).  As to the first step—whether the individual Defendants had a "right and ability to supervise" the infringing activity—courts have found that "[a]n individual defendant has the right and ability to supervise if they possess dominion, control and/or oversight of a commercial establishment's activities."  Kraynak, 2013 WL 228962, at *6 (citing Cibulka, 2011 WL 3273058 at *1; J & J Sports Prods. v. Benson, No. Civ.A.60-1119, 2007 WL 951872 at *7 (E.D.N.Y. March 27, 2007); Angry Ales, Inc., 2007 WL 3226451 at *4).  For this prong, "a plaintiff must allege more than the shareholder's mere right and ability to supervise the corporation's conduct generally. . . . The plaintiff must allege that the defendant had supervisory power over the infringing conduct itself."  J & J Sports Prods., Inc. v. Walia, No. Civ.A.10-5136, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011).  Individual liability requires that "the individual authorize the underlying violations."  J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473

(E.D.N.Y. 2009) (citing Benson, 2007 WL 951872, at *7).  "Allegations of ownership of the establishment, without more, are insufficient to establish personal liability."  J & J Sports Prods., Inc. v. Dougherty, No. Civ.A.12-1255, 2012 WL 2094077, at *2 (E.D. Pa. June 11, 2012); see also 291 Bar & Lounge, 648 F. Supp. 2d at 473 (holding that mere evidence that an individual is an owner of an offending establishment is an insufficient basis on which to impose individual liability).

Plaintiff alleges that Defendants Rafael and Maria Martinez had a right and ability to supervise the violations based on several pieces of evidence.  They were the sole officers, directors, and shareholders of 300 R&M, which owned 3 Hundred West, (Riley Decl., Exs. 6–8); Raphael Martinez was the President, Secretary, Treasurer, Director and Stockholder on 300 R&M's liquor license, (id., Ex. 1); and Maria Martinez was the Vice-President, Director and Stockholder on 300 R&M's liquor license.  (Id.)  Finally, Defendants were the sole individuals appointed as officers at the first meeting of the Board of Directors of 300 R&M.  (Riley Decl., Ex. 8.)

This evidence falls short of conclusively establishing "right and ability to supervise."  The evidence produced by Defendants reveals that both Rafael Martinez and Maria Martinez live in Washington, D.C.  (Defs.' Resp. to Interrog. No. 3.)  Both Defendants have averred that they were not managing the bar at the time the Program was shown.  (Defs.' Resps. to Interrog. Nos. 21, 22.)  Further, they both deny that they authorized interception of the event, (Defs.' Resps. to Requests for Admissions Nos. 27, 28) and state that Julio Lopez, not them, managed the

establishment.[3]  (Defs.' Resp. to Requests for Admissions No. 30.)  Finally, both deny that they were in the bar on the night in question.  (Defs.' Resps. to Requests for Admissions Nos. 32, 33, 38, 39, & 40.)  Simply put, there is no evidence that the Defendants were present at the nightclub when the Program was shown, that they personally authorized the interception and display of the Program, or that they authorized advertisements for the display of the Program.  Absent some evidence that the individual Defendants had supervisory influence over the infringing conduct itself, the Court cannot enter summary judgment holding them individually liable for the violation of Section 605.

Even assuming *arguendo* that Plaintiff could prove Defendants had the right and ability to supervise the violations, Plaintiff's individual liability claim would nonetheless fail on the second prong of a direct financial benefit from such an activity.  "[The] standard imposing individual liability requires [the] plaintiff to do more than simply state [that the Defendant] is the sole shareholder."  Kraynak, 2013 WL 228962, at *7.  Courts consider a direct financial benefit to be present when the infringing conduct acts as a draw for customers.  Parker, 242 F. App'x at 837 (citing Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004)); Kraynak, 2013 WL 228962, at *7.  "The draw for customers based upon the infringing materials need not be substantial."  Ellison, 357 F.3d at 1079.

In this case, Plaintiff presents no evidence to establish that the individual Defendants received any direct financial benefit.  Both investigators indicated that they did not pay a cover

---

[3]  Plaintiff argues that Rafael Martinez's assertion that he was not managing the establishment at the time is belied by the liquor license, which identifies Mr. Martinez as "manager/steward."  (Riley Decl., Ex. 1.)  The Court does not find this evidence—which merely lists a series of titles for Mr. Martinez, one of which is "manager/steward—to be probative of whether Mr. Martinez actually managed the bar, particularly on the night in question.

charge.  Moreover, there is no evidence that advertising of the Program was done to draw customers, that the bar had more customers than on a normal night, or that food and drink prices were raised in connection with the showing of the Program.  Given the lack of any evidence to prove this prong, summary judgment as to Mr. and Mrs. Martinez's individual liability is unwarranted.

In sum, although Plaintiff has clearly established liability against the Defendants in their corporate capacity, the evidence adduced by Plaintiff is insufficient to extend such liability to the Defendants in their individual capacities.  As such, Plaintiff's Motion for Summary Judgment against the corporate Defendants as to liability is granted and Plaintiff's Motion for Summary Judgment against the individual Defendants as to liability is denied.[4]

**B.     Damages**

Having determined liability as to Defendants in their corporate capacity, the Court must next decide damages.  As correctly noted by Plaintiff, an aggrieved party under Section 605 may, at its discretion, recover either actual or statutory damages.  47 U.S.C. § 605(e)(3)(C).  Plaintiff believes it would be "impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff," and, therefore, it elects to receive statutory damages. (Pl.'s Mem. Supp. Mot. Summ. J. 10.)  In addition, it seeks "enhanced" damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which are permitted where "the violation was committed willfully and for purposes of commercial advantage or private financial gain."  Id.  The Court considers each

---

[4]  Defendants did not move for summary judgment.  Therefore, the claim for individual liability against Defendants still remains viable.

11

type of damages individually.[5]

### 1.  **Statutory Damages**

With respect to the statutory damages, Section 605 provides:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

"The logical starting point for computing statutory damages is the amount of foregone revenue that plaintiff suffered as a result of defendants' piracy." Joe Hand Promotions, Inc. v. Becchetti, No. Civ.A.12-1242, 2013 WL 4520638, at *3 (M.D. Pa. Aug. 26, 2013) (citing Kraynak, 2013 WL 228962, at *4 (considering compensation as a factor in computing damages); Kingvision Pay-Per-View Ltd. v. Lardo, No. Civ.A.10-0059, 2010 WL 3463316, at *3 (W.D. Pa. Sept. 1, 2010) (same)). In addition to compensation, "courts have recognized the role of § 605 in deterring future piracy." Becchetti, 2013 WL 4520638, at *4 (citing cases). Courts within the Third Circuit have approved awards of statutory damages in excess of actual damages for the

---

[5] The parties each cite a plethora of cases in support of their respective positions on damages. After reviewing these cases, the Court does not find them particularly helpful for two reasons. First, most of those cases involved default judgments wherein the defendant never answered the complaint or otherwise appeared, leaving the plaintiff with no opportunity to take discovery. In the present case, however, Defendants have answered the Complaint and proceeded fully through this case, giving Plaintiff the opportunity to pursue discovery. Second, the damage awards are highly fact-intensive. Plaintiff, on one hand, has cited to cases that all resulted in large damage awards, while Defendants, on the other hand, have cited to cases that all had lower damage awards. Ultimately, the Court cannot rely exclusively on either party's citations and must make a damages award consistent with the particular circumstances of the present case.

purpose of deterrence.[6]  Kraynak, 2013 WL 228962, at *4 (citing Lardo, 2010 WL 3463316, at

*3); J & J Sports Prods., Inc. v. Gallegos, No. Civ.A.08–0201, 2008 WL 3193157 at *4 (D.N.J.

Aug. 5, 2008); Comcast Cable Co. v. Bowers, No. Civ.A.06-1664, 2007 WL 1557510 at *4–5

(D.N.J. May 25, 2007)).   Nonetheless, district courts within the Third Circuit have likewise

acknowledged that "when a large discrepancy exists between actual damages . . . and maximum

statutory damages . . ., an award of maximum statutory damages is not appropriate despite its

deterrent effect."  Kraynak, 2013 WL 228962, at *4 (citing J & J Sports Prods., Inc. v.

Gencarelli, No. Civ.A.10–4375, 2012 WL 4442514 at *2 (E.D. Pa. Sept. 21, 2012); J & J Sports

Prods., Inc. v. Edrington, No. Civ.A.10-3789, 2012 WL 525970 at *4 (D.N.J. Feb. 16, 2012); J &

J Sports Prods., Inc. v. Perdomo, No. Civ.A.06-1374, 2007 WL 923522 at *4 (D.N.J. March 26,

2007); J & J Sports Prods., Inc. v. Munguti, No. Civ.A.06-1282, 2007 WL 928479 at *3–4

(D.N.J. March 27, 2007)).  In other words, there is "a recognition that the maximum statutory

damages should be reserved for cases where there is evidence of more substantial injury to the

plaintiff or profit by the defendants."  Kingvision Pay-Per-View Ltd. v. Jasper Grocery, 152 F.

Supp. 2d 438, 442 (S.D.N.Y. 2001).

Taking these factors into consideration, the Court notes that Plaintiff has submitted into

evidence a rate card showing that the commercial fee to broadcast the Program for an

establishment the size of Defendants' was $1,200.  (Gagliardi Aff. ¶ 8, Ex. 2.)  It has offered no

other evidence of actual damages.  Merely awarding this amount, however, would be insufficient

---

[6]  "The courts that have looked at § 605's role as a deterrent have analyzed the issue
under the main statutory damages provision, not the enhanced damages provision, which looks
instead at whether the piracy was done willfully and or for commercial advantage."  Becchetti,
2013 WL 4520638, at *4 n.3.

to dissuade Defendants, and others like them, from engaging in future piracy.  As such, some additional statutory damages are appropriate as a deterrent.  In calculating the amount of such damages, the Court remains cognizant of several mitigating factors including (a) the fact that, unlike so many other cases of this kind, this case does not involve a default judgment; (b) there is no evidence that Defendants substantially profited from the violation such that they would be unjustly enriched by a smaller award; and (c) there is no indication that this case calls for greater deterrence.  Given all of these factors, the Court concludes that a statutory damage award of $3,600—three times the commercial licensing fee—is appropriate under the circumstances.  This sum is sufficient to fully compensate Plaintiff for lost profits, undercut any profit Defendants may have made from the exhibition of the Program, and deter these Defendants, as well as others, from committing such piracy.

### 2.   Enhanced Damages

In addition to basic statutory damages, Plaintiff seeks enhanced damages in an undefined amount.  The statute provides that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."  47 U.S.C. § 605(e)(3)(C)(ii).  As to the willfulness prong of this provision, courts have repeatedly found that the mere act of piracy itself evidences intent because in order for a closed-circuit broadcast to be intercepted, the interceptor has to engage in some deliberate act; it is virtually impossible to do so accidentally.  Becchetti, 2013 WL 4520638, at *4; Joe Hand Promotions, Inc. v. Waldron, No. Civ.A.11-849, 2013 WL 1007398, at *3 (D.N.J. March 13,

2013); Lardo, 2010 WL 3463316, at *4; Joe Hand Promotions, Inc. v. McBroom, No. Civ.A. 09-276, 2009 WL 5031580, at *5 (M.D. Ga. Dec. 1, 2009); Garden City Boxing Club, Inc. v. Paquita's Café, Inc., No. Civ.A.06-6953, 2007 WL 2783190, at *5 (S.D.N.Y. Sept. 26, 2007). As to the piracy for commercial advantage or financial gain prong, a court may infer that the violation was for pecuniary gain where the illegal broadcast was made at a place of business as opposed to a private home.  Waldron, 2013 WL 1007398, at *3.  Courts within this Circuit have also generally considered five factors originally articulated by the District of New Jersey, including: "the number of televisions broadcasting the event, the existence of a cover charge, sale of food or drink, advertisement of the event in the defendant's bar, and a demonstration that defendants made more money or conducted additional business by illegally broadcasting the event." Munguti, 2007 WL 928479, at *3; see also Kraynak, 2013 WL 228962, at *5 (applying Munguti factors).  Ultimately, "[t]he Court must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business."  Setanta Sports N. Am. Ltd. v. Pickford, 09-818, 2010 WL 2432088, at *5 (M.D. Fla. May 21, 2010) (quotations omitted).

In the present case, Defendants do not attempt to argue that their interception of the Program was accidental, nor have they offered any defenses for their conduct.  Moreover, Defendants' showing of the Program in a bar allows for an inference that the piracy was done for commercial or financial gain.  At the same time, however, Plaintiff has not adduced any evidence—despite having the opportunity to take discovery in this case—that Defendants have repeatedly pirated broadcasts over an extended period of time, advertised the Program, or raised its prices on food or drink in order to profit from the broadcast of the Program.  In fact, Plaintiff's

15

own investigators have admitted that there was no cover charge on the night that the Program was exhibited and that the bar had only two television screens showing the Program.  Finally, although the bar could hold sixty patrons, the investigators counted anywhere between twenty and thirty-four patrons in the bar on the night of the Program.  Plaintiff offers no evidence that this number of patrons was greater than a normal night or that Defendants conducted additional business as a result of the broadcast of the Program.

Given the obvious willfulness of Defendants' violation, which strongly favors an award of at least some enhanced damages, but absent the "aggravating" factors showing an obvious financial gain, the Court is left with the question of how much to award.  Many courts have given an enhanced damages award of treble the statutory damages.  See Lardo, 2010 WL 3463316, at *4; Kingvision Pay-Per-View v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D. Colo 2008); Pickford, 2010 WL 2432088, at *5.  Here, however, such an award—which would amount to an additional $10,800—would cause extreme hardship to a small business and would result in a gross overcompensation of Plaintiff despite its failure to produce any evidence of Defendants' commercial advantage or gain.  The Court, therefore, exercises its discretion and imposes an enhanced damages award equal to the statutory damages award in the amount of $3,600.

### C.    Attorney's Fees

Where a plaintiff prevails on a claim under 47 U.S.C. § 605(a) or § 605(e)(4), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added); DIRECTV, Inc. v. Walsh, 540 F. Supp. 2d 553, 562 (M.D. Pa. 2008).  Plaintiff, in this case, seeks its costs and attorneys' fees, but has requested fourteen days from the entry of judgment to submit evidence of

16

its costs and fees.  As Plaintiff is clearly entitled to its reasonable fees and costs, the Court grants its requested fourteen days.

## IV.    CONCLUSION

In light of the foregoing, the Court enters judgment in favor of Plaintiff and against Defendants doing business as 300 Hundred West in the amount of $7,200.  In addition, Plaintiff shall have fourteen days in which to submit evidence of its costs and attorneys' fees.  To the extent that Plaintiff seeks judgment against Defendant Raphael and Maria Martinez individually, however, its Motion is denied.

An appropriate Order follows.